## *In re* DEPARTMENT OF PUBLIC PARKS.

### *In re* WATERS.

*(Supreme Court, General Term, First Department. June 6, 1890.)*

1. MUNICIPAL CORPORATIONS—PARKS—COMMISSIONERS' REPORT—REVIEW.
    Under Laws N. Y. 1884, c. 522, which provides for the appointment of commissioners to acquire land for public parks in New York city and Westchester county, and which declares (section 9) that they shall be allowed for necessary clerk hire, surveys, etc., a sum allowed by the general term of the supreme court in the first judicial district, the approval of a surveyor's bill by the commissioners is not conclusive or final, but is subject to review by the general term.

2. SAME—SURVEYOR'S COMPENSATION.
    The surveyor having charge of part of the work rendered a bill for $106,998 for his own services and that of his subordinates, which was approved by the commissioners. The city objected to the bill, and a hearing was ordered before a referee. It appeared that the land surveyed, in different localities, was 1,715 acres; that the descriptions furnished the surveyor were 980; that the time devoted to the work was 3 years and 9 months; and that the yearly salaries actually paid his subordinates was far below the amount charged the city by the surveyor. *Held,* that the referee's report allowing the surveyor $45,000 for his own services, and $24,550 for his subordinates, which witnesses for the city testified was a reasonable compensation, would not be disturbed, though the surveyor and two witnesses in his behalf testified that the bill rendered by him and approved by the commissioners was not excessive.

**8. SAME—EVIDENCE.**
> Testimony as to what was done by another in a survey made by him and his report, and the number of men employed by him, and as to what it would have cost the department to do the work, was properly excluded by the referee as irrelevant to the question of reasonable compensation.

Exceptions to report of referee.

Application by the department of public parks to acquire title to land. Robert L. Waters, a civil engineer and surveyor in the employ of the commissioners of estimate, excepts to the report of the referee concerning compensation to be made for his services and expenses.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*John Whalen* and *Geo. Hill,* for exceptant. *Franklin Bartlett,* for the mayor, etc.

DANIELS, J.    The reference was ordered to take proof, and report the same to this court with the opinion of the referee thereon, concerning the services rendered, and charges made therefor, by James C. Lane and Robert L. Waters, in proceedings to acquire lands for public parks in the Twenty-Third and Twenty-Fourth wards of the city of New York, and in adjacent parts of the county of Westchester.    The report, to which these exceptions have been filed, was made upon the evidence relating to the charges of Robert L. Waters, who was a civil engineer and surveyor in the employment of the commissioners of estimate, and for subordinates employed by him under their authority and that of the law.    The bill he rendered, at the charge of 10 cents per lineal foot made by him, for the work done, with $116 for printing and binding, amounted to the sum of $106,998.10, and it received the formal approval of the commissioners.    But this approval was by no means conclusive or final in its effect, for the results of the commissioners' proceedings, as they should be, and in fact were, stated in their report, were still subject to the examination and review of the court appointing them, and under which they acted; and it was, by section 2 of chapter 522 of the Laws of 1884, which authorized and directed the proceedings, after hearing any matter which might be alleged against the report, empowered to confirm it, in whole or in part, or refer it to the same or other commissioners, to reconsider the subject-matter thereof, who should correct and revise it, or make a new report in the premises.    And the report made on that reference was also subject to the same disposition and action on the part of the court; but the subject-matter to which this authority related was the land for which compensation was intended to be made.    The ultimate object was to provide for the acquisition of its title, and the vesting of that title in the mayor, etc., of the city of New York.    That is manifested by the section providing for this proceeding, whose sole end and object was the acquirement of the title, and the adjustment as the means for acquiring it of the compensation to be made for it to the preceding owners; and, when the final confirmation should be reached, then the proceedings were made conclusive for these purposes.    And that this was the intention is disclosed by other provisions of the act directed to the attainment of that end, as well as by the second section, directing the commissioners to make a just and true report of the loss and damage to the respective owners, and others interested in the lands, and prescribing the proceedings to be followed for that purpose.    It is true they were to cause plans, surveys, maps, profiles, and other things to be made and prepared for their use, and, in their report, to include "all costs and expenses for services, maps, and other things." But that part of the report was not declared to be conclusive, as its confirmation was upon the title to the land.    It was, on the contrary, by the ninth section, directly subjected to the action and control of the court by so much of it as declared that the commissioners should "be allowed the necessary expenses for clerk hire, surveys, survey maps, and examination of titles, and other necessary expenses, a sum to be allowed by a general term of the su-

preme court [in the] first judicial district." . This, as well as the other provisions of the act, had placed these expenses wholly and finally under the judgment of the court; and it was subject to that judgment that the direction was given to the commissioners by the fifth section to include these expenses in their report. When this bill was brought before the court, and a confirmation of so much of the report as contained it was applied for, then it was necessarily empowered to take evidence concerning the justness of the charge; and that could be done either by witnesses being brought before and examined in the presence of the court, or, as is the ordinary practice in such instances, directing a reference to secure the evidence necessary for intelligent action. And this course was adopted, as it well could be, to obtain the information essential to the judicious exercise of the power given to the court over these charges.

Upon the reference, the claimant himself, and other witnesses examined in his interest as well as in the interest of the mayor, etc., attended, and gave their evidence; and the referee considered its effect to be that Mr. Waters was entitled to no more than the sum of $45,000 for his own services, and $24,550 for his subordinates, and $116 for printing abstract papers, and binding maps and abstracts. And it is to this reduction of his bill that the exceptions have been directed, which are now before the court. The evidence of Mr. Waters himself was that the account was reasonable in its amount; and he was confirmed, generally, in that estimate by the witness George W. Birdsall, and also, to a fair extent, by James R. Croes. But the witnesses examined on behalf of the mayor, etc., did not by their evidence confirm this view. According to their judgment, Mr. Waters would be reasonably compensated by the allowance of a much smaller amount than he had charged, and was approved by the commissioners, who, it should be said, do not appear to have examined into the propriety of the charge, or done any more than to acquiesce in the account as Mr. Waters made it out. And the facts established by the proof create the probability that these witnesses more nearly approached the accuracy of the case than did Mr. Waters and the witnesses produced by him; for the full extent of the land surveyed in the different localities where his services were rendered was a fraction under 1,715 acres, and the number of descriptions furnished him were 980, and the time by him devoted to the business was 3 years and 9 months. These facts are entitled to have an important effect in the determination of the amount of his compensation, which, even where the public are to supply it, can legally be no more than what shall appear to the court to be reasonable. So far as yearly salaries are stated to have been paid to competent civil engineers and surveyors, they are very far below the amount charged by Mr. Waters; and, with the other facts proved, and all the estimates mentioned by the witnesses who were examined, fairly indicate that the amount mentioned by the referee will be an ample remuneration for the services which have been rendered, and are now in controversy. The allowance reported for Mr. Waters is the sum of $1,000 a month, which exceeds that of the chief officers employed in the government of this state, and it certainly should not be increased by the action to be taken by the court in this case.

A number of exceptions are brought in question, which were made by the referee in the progress of the hearing. The first of these relates to the number of maps made, and the answer should have been taken, although it can be seen, by a consideration of the evidence previously given, what the number was. The same observation is also applicable to the exclusion of the answer to the question concerning the length of time Mr. Waters was engaged in rendering his services; and so it is as to the capacity in which he was engaged.

What was done by Mr. Birdsall in a survey made by him, and his report, and the number of men employed, were facts having no relevancy whatever

to the hearing before the referee, and the answers to the questions directed to those subjects were rightly excluded. It was also unimportant to figure what it would have cost the department to do the work, for it would have been immaterial, and, at most, conjectural. There was nothing improper in allowing Mr. Vogel to state that he was familiar with the work of the surveys; and consistency in the rulings required that his answers as to the cost of surveys to the department should have been excluded. But the report should not, on that account, be disturbed, for the evidence could be attended with no other effect than to increase the bulk of the printed case. It could have no important effect whatever over any part of the present controversy. That is also true as to the workmanship of the maps. The evidence obtained from Stephenson Towle was competent, for it directly affected the value of what was included in the account of Mr. Waters. Neither of the objections which have been made justify any interference with the report of the referee, but it should be confirmed, and the amounts mentioned by him paid as a full and complete remuneration for all the charges contained in this account. Instead of being below what they should be, the allowances are both generous and liberal, under the proofs and probabilities affecting them.